UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-60261-ALTMAN

LM MEDIA, LLC.,

 *Plaintiff,*

*v.*

ELLO ENTERTAINMENT GROUP, LLC.,

 *Defendant.*

_____/

## ORDER

The copyright owner of Slavic-language soundtracks sued a Wyoming-based distributor of sound recordings and videos, alleging violations of the Copyright Act. The Defendant now moves to dismiss the complaint, arguing—among other things—that the Plaintiff fails to establish our personal jurisdiction over the Defendant. After careful review, we agree and now **GRANT** the motion.

## THE FACTS[1]

Our Plaintiff, LM Media ("LMM"), "is a Florida limited liability company with its principal place of business in Florida[.]" Amended Complaint [ECF No. 68] ¶ 1. "LMM and its assignees are the copyright owners or owners of exclusive rights concerning popular sound recordings sold or otherwise commercially exploited in the United States[.]" *Ibid.* Our Defendant, Ello Entertainment Group, LLC ("Ello"), "is a Wyoming limited liability company" with an office in Marina Del Rey,

---

[1] We accept the allegations of the Amended Complaint as true for purposes of this Order. *See Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but 'legal conclusions without adequate factual support are entitled to no assumption of truth.'" (quoting *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (cleaned up))).

California, *id.* ¶ 2, created and "owned by an immigrant from the USSR," *id.* ¶ 18. Ello serves as "a global commercial distributor of sound recordings and video[s.]" *Id.* ¶ 12.

The Plaintiff alleges that Ello "has achieved dramatic growth and profitability in recent years by operating as a hub for distributing copies of the world's popular copyrighted recordings through infringement." *Ibid.* In fact, the Plaintiff says, "Ello has been entering into contracts with individuals who claim to hold copyrights[.]" *Id.* ¶ 19. "As a result, Ello's client list is overrun with fraudulent 'artists' and pirate record labels who rely on Ello and its distribution network to seed infringing copies of popular sound recordings throughout the digital music ecosystem." *Ibid.*

This infringing conduct included our Plaintiff's copyrights. LMM "has identified numerous tracks distributed by Ello to various platforms and digital music services that infringe upon LMM's valuable recordings." *Id.* ¶ 21. In addition to distributing the Plaintiff's copyrighted work, "Ello has utilized copyright management tools provided by YouTube to claim copyright interests in specific recordings at issue and monetize videos featuring those recordings, which are posted on YouTube by users." *Id.* ¶ 9. Ello therefore "collects royalties it knows are properly payable by digital music services to LMM and other rightful copyright owners." *Id.* ¶ 24.

We aren't told what kinds of sound recordings Ello distributes, but they seem to be centered around Slavic speakers. In any case, the Amended Complaint tells us that "Ello has purposefully directed its electronic activity and distribut[ion] [of] infringing tracks [ ] towards the U.S. market, including in Florida." *Id.* ¶ 7. It then, without explanation, notes that "Florida ranks the third most populous State in the U.S., with immigrants who speak Eastern European languages such as Russian and Ukrainian at home . . . being first generation, second generation, or third generation immigrants form the former USSR republics, Eastern Europe, or people who like Eastern European music and performers." *Ibid.*

On February 12, 2025, the Plaintiff sued the Defendant, alleging copyright infringement in violation of 17 U.S.C. § 504. *See id.* ¶¶ 69–81. The Plaintiff alleges that "Ello engaged in repeated and pervasive infringement of LMM's exclusive rights to reproduce and distribute LMM's copyrighted sound and video recordings," and that "the service providers to which Ello has distributed and purported to license LMM's sound and video recordings [continue to] infringe the copyrights in LMM's copyrighted recordings when they reproduce, publicly perform, and further distribute LMM's recordings under the color of their purported but ineffective licenses from Ello." *Id.* ¶ 84. The Defendant has now filed a Motion to Dismiss (the "MTD") [ECF No. 74].[2]

## THE LAW

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "But if a defendant challenges personal jurisdiction in a Rule 12(b)(2) motion to dismiss, Federal Rule of Civil Procedure 12(i) affords the district court discretion on how to proceed." *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333 (11th Cir. 2025) (cleaned up). "The district court has two options: (1) hold an evidentiary hearing before trial to make factual findings about personal jurisdiction or (2) decide the motion to dismiss under a prima facie standard without an evidentiary hearing." *Ibid.* (cleaned up). "[I]f the district court does not hold an evidentiary hearing," it simply reviews whether the plaintiff satisfies the prima facie requirement, which is a purely legal question." *Ibid.* (cleaned up). Still, "the district court must construe all reasonable factual inferences in favor of

---

[2] The MTD is now fully briefed and ripe for adjudication. *See* Response [ECF No. 75]; Reply [ECF No. 76].

the plaintiff." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (cleaned up).

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1221 (S.D. Fla. 2023) (Altman, J.) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to [the] plaintiff, but legal conclusions without adequate factual support are entitled to no assumption of truth." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (cleaned up).

### ANALYSIS

The Defendant offers a long list of arguments for dismissal. *See* MTD at 1–2. But "courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims." *Republic of Pan. v. BCCI Hldgs. (Lux.) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997). We thus begin—and end—there.

"The Supreme Court has recognized two types of personal jurisdiction: general jurisdiction . . . and specific jurisdiction." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1228 (11th Cir. 2023). "General jurisdiction lies in the forum where the defendant is domiciled or fairly regarded as at home." *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 12 (2025) (cleaned up). "A court in such a forum may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Ibid.* (cleaned up). "Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). "To exercise specific jurisdiction, the defendant must

have 'purposefully availed' itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1317 (11th Cir. 2025) (quotation marks omitted).

"[A] federal court generally undertakes a two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1272 (11th Cir. 2022). *First*, we "determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute." *Ibid. Second*, we "decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Ibid.*

Neither the Amended Complaint nor the Plaintiff's Response are models of clarity. The Amended Complaint fails to identify a single provision of Florida's long-arm statute that, in its view, would allow us to exercise personal jurisdiction over the Defendant. The Response, for its part, offers a less-than-coherent rebuttal that fails to differentiate between the statutory and constitutional elements of personal jurisdiction. What the Plaintiff does give us is a footnote (in the Response) that quotes three provisions of Florida's long-arm statute—without telling us anything else. *See* Response at 6 n.1. Here's what the footnote says in its entirety:

> The relevant statutory provisions states [sic]: "1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state."
>
> "2. Committing a tortious act within this state."
>
> "6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:" "a. The defendant was engaged in solicitation or service activities within this state; or b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use."

Response at 6 n.1 (quoting § 48.193(1)(a)). Unfortunately, neither the Response nor the Amended Complaint explains how these provisions subject our Defendant to personal jurisdiction here—or even how these provisions apply to our facts. That's no way to brief an argument in federal court. *See Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.").

Still, in the interest of completeness, we'll do some of the Plaintiff's heavy lifting for him and assume that he's trying to establish specific personal jurisdiction over the Defendant via three provisions of Florida's long-arm statute: *first*, under FLA. STAT. § 48.193(1)(a)(1), which covers "any cause of action arising from . . . carrying on a business or business venture in this state"; *second*, under FLA. STAT. § 48.193(1)(a)(2), which encompasses "tortious act[s]" committed "within" Florida; and *third*, under FLA. STAT. § 48.193(1)(a)(6), which extends to acts that "[c]aus[e] injury to persons or property within this state." We address each of these (potential) arguments in turn.

## I.       Subsections (1)(a)(1) and (1)(a)(6)

We'll start with Subsection (1)(a)(6), which allows a plaintiff to establish personal jurisdiction over "any cause of action arising from . . . [c]ausing injury . . . within this state . . . if . . . the defendant was engaged in solicitation or service activities within this state; or . . . [p]roducts, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state." FLA. STAT. § 48.193(1)(a)(6). Our Plaintiff claims to have sustained *monetary* damages in Florida. *See* Amended Compl. ¶ 78 ("LMM is entitled to its actual damages and Ello's profits from infringement, in amounts to be proven at trial."); *id.* ¶ 1 (stating that LMM's "principal place of business [is] in Florida"); *cf. CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011)

6

("[A] corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business."); *Armada (Sing.) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1092 (7th Cir. 2018) ("[E]conomic injuries are felt at a corporation's principal place of business[.]"); *Boswell v. Boswell*, 902 So. 2d 844, 845 (Fla. Dist. Ct. App. 2005) (holding that any alleged economic injury to a corporation "would have occurred in Missouri," where the corporation "is incorporated in Missouri, and has its principal place of business in Missouri"). But "Florida's Supreme Court has held that economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction under § 48.193(1)(a)[6]." *Courboin v. Scott*, 596 F. App'x 729, 734 (11th Cir. 2014); *see also Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 735–36 (11th Cir. 2018) ("[J]urisdiction is not proper under § 48.193(1)(a)(6) because [the plaintiff] has alleged only economic injuries."); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 629 (11th Cir. 1996) (considering the predecessor to § 48.193(1)(a)(6) and finding that, where the complaint alleges copyright, patent, and trademark infringement, the plaintiff "has neither alleged nor proven personal injury or property damage aside from the purely economic loss pleaded in its complaint"). So, Subsection (1)(a)(6) cannot confer personal jurisdiction here.

The Plaintiff's reliance on Subsection (1)(a)(1) fares no better. That subsection allows plaintiffs to establish personal jurisdiction over "any cause of action arising from . . . [o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." FLA. STAT. § 48.193(1)(a)(1). "In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). "[F]actors relevant to whether a plaintiff has shown a defendant's general course of business activity[ ] includ[e]: (1) the presence and operation of an office in Florida, (2) the possession and maintenance of a license to do

7

business in Florida, (3) the number of Florida clients served, and (4) the percentage of overall revenue gleaned from Florida clients." *Melgarejo v. Pycsa Pan., S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013) (quotation marks omitted).

Our Plaintiff fails to demonstrate that the Defendant "carr[ies] on a business or business venture in Florida" within the meaning of Subsection (1)(a)(1). The Amended Complaint notes that Ello is "registered in the State of Wyoming" and has "an office in the State of California." Amended Compl. ¶ 3. But it "is silent as to whether [the Defendant] has any agents or offices in Florida." *Hart Agric. Corp. v. Kea Invs. Ltd.*, 2023 WL 155208, at *4 (11th Cir. Jan. 11, 2023). What's more, the Amended Complaint fails to detail any connection between the Defendant and Florida—much less one that comes anywhere close to establishing "a direct affiliation, nexus, or substantial connection . . . between the basis for the cause of action and the business activity." *Doe (V.H.) v. Hyatt Hotels Corp.*, 2024 WL 3859882, at *1 (11th Cir. Aug. 19, 2024) (quotation marks omitted); *see also ibid.* ("Florida courts have interpreted the specific jurisdiction under Florida Statute § 48.193(1)(a)(1) to require 'connexity,' or 'a causal connection between the defendant's activities in Florida and the plaintiff's cause of action.'").

At most, the Amended Complaint observes that "Ello distributed infringing tracks to third parties with the understanding and intent that third parties would make those tracks available in Florida" through "online streaming or digital download services[.]" Amended Compl. ¶ 4. This (our Plaintiff says) created a "substantial and continuous presence in the State of Florida" because Ello "fe[d] thousands of Florians [sic] with video and audio assets," *id.* ¶ 6, via platforms "such as YouTube," *id.* ¶ 34.[3] And (the Plaintiff adds) South Florida is home to "immigrants who speak Eastern

---

[3] Exhibit B to the Amended Complaint includes a list of 131 allegedly infringing postings. *See generally* Exhibit B to Amended Complaint [ECF No. 68-2]. Each URL links either to "www.youtube.com" or to "https://youtu.be." *Ibid.* We can consider Exhibit B, which is attached to the Amended Complaint,

European languages such as Russian and Ukrainian at home[.]" *Id.* ¶ 8. For two reasons, these allegations are insufficient under Subsection (1)(a)(1).

*First*, neither the Amended Complaint nor the Response explains *why* the presence of "immigrants who speak Eastern European languages such as Russian and Ukrainian at home" is relevant here. LMM never alleges that its copyrighted materials appeal to this audience or that Ello's infringing conduct targeted "Eastern European language" soundtracks. While we "must construe all reasonable factual inferences in favor of the plaintiff," *Diamond Crystal Brands*, 593 F.3d at 1257, LMM hasn't given us enough factual material to draw *any* reasonable inference here.

*Second*, whatever inference might be drawn from these allegations, LMM is simply wrong on the law. "[E]lectronic communications from out-of-state offices into Florida do not establish conducting business in Florida," *Prunty*, 753 F. App'x at 735 (cleaned up), and "the mere existence of a website that is visible in a forum . . . is not enough, by itself, to subject a defendant to personal jurisdiction in that forum," *Fraser v. Smith*, 594 F.3d 842, 847 (11th Cir. 2010) (cleaned up); *see also Westwind Limousine, Inc. v. Shorter*, 932 So. 2d 571, 575 n.7 (Fla. Dist. Ct. App. 2006) ("[M]erely posting a passive website does not constitute either the solicitation of business in Florida or the transaction of business in Florida for purposes of a jurisdictional due process analysis." (cleaned up)). No one disputes that Ello "had no Florida business license." *Melgarejo*, 537 F. App'x at 860. And the mere fact that the allegedly copyrightable material appeared on YouTube—and that it was thus available to Florida residents—doesn't satisfy "the connexity requirement conferring jurisdiction."

---

without converting the MTD into a motion for summary judgment. *See Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (explaining that "documents attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal district court in ruling on a motion to dismiss"); *see also* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *cf. Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1224 n.4 (S.D. Fla. 2023) (Altman, J.) ("We can consider these documents, which *are* attached to the SAC, without converting the MTD into a motion for summary judgment.").

9

*Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1137 (Fla. Dist. Ct. App. 2018); *see also Wood v. Netflix, Inc.*, 2025 WL 918078, at *11–12 (M.D. Fla. Mar. 26, 2025) (Honeywell, J.) (finding no personal jurisdiction over the streaming platform Netflix because "the cause of action [wa]s not substantially connected to the defendant's business activities," which included "streaming its content to subscribers residing in Florida"); *cf. Karnas v. Cuban*, 2025 WL 3759241, at *6 (S.D. Fla. Dec. 30, 2025) (Altman, J.) ("Nor can our Plaintiffs show that the Mavericks 'carry on' business in Florida . . . . No one disputes that the Mavericks had no Florida business license. And the mere fact that the team played games in Florida is 'irrelevant': Those games didn't feature Voyager promotions and so lack the connexity requirement conferring jurisdiction." (cleaned up)).[4] Our Plaintiff thus cannot rely on Subsection (1)(a)(1) either.

## II.      Subsection (1)(a)(2)

Our Plaintiff also seems to argue that the Defendant committed torts in Florida within the meaning of Subsection (1)(a)(2), which allows plaintiffs to establish personal jurisdiction over "any cause of action arising from . . . [c]ommitting a tortious act within this state." FLA. STAT. § 48.193(1)(a)(1). Here's what the Plaintiff says on this issue:

> The case law in Florida establishes: (1) physical presence in Florida is not required to "commit a tortious act" for purposes of Florida's long-arm statute. Further, (2) making telephonic, electronic, or written communications into Florida from outside the State may constitute "committing a tortious act" if the alleged cause of action arises from the communications.
>
> Making electronic or written communications into this State can constitute "committing a tortious act" within Florida to subject a nonresident defendant to personal jurisdiction under section §48.193(1)(b). Florida's Supreme Court held that: "committing a tortious act" within Florida under section §48.193(1)(b) can occur ["']by

---

[4] *See also Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004) (King, J.) (noting that "selling subscriptions to an internet site to an unknown, relatively small number of Florida residents, without more, does not constitute carrying on a business in Florida under § 48.193(1)(a)"); *Atmos Nation, LLC v. BnB Enter., LLC*, 2017 WL 3763949, at *5 (S.D. Fla. Apr. 24, 2017) (Dimitrouleas, J.) ("The mere existence of a website, accessible in Florida, featuring infringing products would not, by itself, support specific jurisdiction over the defendant in Florida.").

> making telephonic, electronic, or written communications into this State, provided that the tort alleged arises from such communications."

Response at 8–9 (quoting *Wendt v. Horowitz*, 822 So. 2d 1252, 1253 (Fla. 2002)).[5]

Again, however, the Plaintiff fails to connect the Florida long-arm statute to its allegations. The Plaintiff doesn't explain how the tortious act of copyright infringement (the subject of the Amended Complaint) was committed *in* Florida, and it doesn't tell us whether that tort "arises from" "telephonic, electronic, or written communications into this State"—which are the kinds of allegations we would need to justify the exercise personal jurisdiction over the Defendant. *Wendt*, 822 So. 2d at 1253. And it cites no cases *supporting* its view that we may lawfully exercise personal jurisdiction in the circumstances presented here. Instead—and without explanation or even an attempt to distinguish them—our Plaintiff relies on cases in which courts have concluded that there was *no* constitutional basis for asserting personal jurisdiction over the defendants. *See* Response 8–9. For example, the Plaintiff cites *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990), for the proposition that "[t]he tortious act provision of this section was sufficient to provide the basis for asserting personal jurisdiction over a nonresident defendant in a libel action[.]" Response at 9. But that's not what happened. True, the court concluded that the long-arm statute was satisfied because "the offending material [was] circulated" in Florida. *Madara*, 916 F.2d at 1515 ("[B]ecause the tort in this case occurred in Florida, a federal district court sitting in that state may exercise jurisdiction over [the] defendant [ ] under

---

[5] The Plaintiff cites the *wrong* subsection of Florida's long-arm statute: Subsection (1)(b), which provides that, "[n]otwithstanding any other provision of this subsection, an order issued, or a penalty or fine imposed, by an agency of another state is not enforceable against any person or entity incorporated or having its principal place of business in this state if the other state does not provide a mandatory right of review of the agency decision in a state court of competent jurisdiction." § 48.193(1)(b). That subsection obviously has nothing to do with "'committing a tortious act' within Florida," which is the proposition the Plaintiff cites it for. Response 8–9. We'll therefore assume that the Plaintiff is actually relying on Subsection (1)(a)(6), which allows plaintiffs to establish personal jurisdiction over "any cause of action arising from . . . [c]ommitting a tortious act within this state." FLA. STAT. § 48.193(1)(a)(1).

the Florida long-arm statute."). But the court then "determined that [the defendant's] contacts with Florida [were] insufficient to establish [the] constitutionally-required minimum contacts[.]" *Id.* at 1519. The Plaintiff's reliance on *Internet Sols. Corp. v. Marshall*, 2010 WL 11617855, at *1, *6 (M.D. Fla. Sept. 30, 2010) (Conway, J.), is equally puzzling. The court there, after all, found that, "although jurisdiction would be appropriate pursuant to Florida's long-arm statute," *id.* at *1, "[t]here are not sufficient minimum contacts to satisfy the principles of the Due Process Clause, and an exercise of personal jurisdiction over the defendant would offend traditional notions of fair play and substantial justice," *id.* at *6. Both cases thus undermine the Plaintiff's position here.

In any event, the Plaintiff doesn't explain how these cases may (or may not) apply to the facts of our case. "Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk." *S.W. v. Tropical Paradise Resorts, LLC*, 2026 WL 806786, at *13 (S.D. Fla. Mar. 24, 2026) (Altman, J.) (quoting *Sideridraulic Sys. SpA v. Briese Schiffahrts GmbH & Co. KG*, 2011 WL 3204521, at *2 (S.D. Ala. July 26, 2011) (Steele, C.J.)); *see also MY. P.I.I. LLC v. H&R Marine Eng'g, Inc.*, 544 F. Supp. 3d 1334, 1346 (S.D. Fla. 2021) (Altman, J.) ("We judges should be expected to work hard—yes; and, it's true, we benefit, to an almost embarrassing degree, from the substantial resources Congress has allotted us—chief among these, our law clerks. But these two ingredients—smart law clerks and a penchant for hard work—do not oblige us to do the lawyers' jobs as well as our own. The law demands that lawyers present their clients' cases with argument *and* citation."). Our Plaintiff must do better.

Still (and, again, in the interest of completeness), we'll do the Plaintiff's work for it and advance the arguments it failed to raise itself.

### a. The Intentional-Tort Theory

The Plaintiff believes that the Defendant "purposefully directed its electronic activity and distribute[d] infringing tracks [ ] towards the U.S. market, including in Florida, for which Ello receives

12

revenues corresponding to the popularity of the recordings within the U.S. market, thereby infringing the copyrights, in particular" the Plaintiff's. Amended Compl. ¶ 7; *see also id.* ¶ 9 ("The effects of Ello's unlawful conduct are felt in the United States, particularly in the Southern District of Florida."). But this theory doesn't pass muster under the Due Process Clause of the U.S. Constitution. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) ("If *both* Florida law *and* the United States Constitution permit, the federal district court may exercise jurisdiction over the nonresident defendant." (emphases added)).

The Due Process Clause limits "a state's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (cleaned up). In considering whether a federal court's exercise of specific jurisdiction over a non-resident defendant comports with due process, we examine "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

The Plaintiff falters at the purposeful-availment prong, which has "two applicable tests: the effects test and the minimum contacts test." *Del Valle*, 56 F.4th at 1275. "Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment without regard to whether the defendant had any other contacts with the forum state." *Id.* at 1276. And, under the minimum-contacts test, personal jurisdiction is proper when a "nonresident defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *SkyHop Techs.*, 58 F.4th at 1228 (cleaned up). Applied here, neither test confers personal jurisdiction over our Defendant.

13

### i. The Effects Test

"Stated in its broadest construction, the effects test requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 n.28 (11th Cir. 2009); *see also Calder v. Jones*, 465 U.S. 783, 789 (1984) (explaining that the effects test asks whether a state "is the focal point both of the story and of the harm suffered"). That second element proves fatal to our Plaintiff because it has failed to show that the Defendant "committed . . . intentional torts *specifically aimed* at a Florida resident." *Licciardello*, 544 F.3d at 1287 (emphasis added).

The Amended Complaint alleges that "Ello distributed infringing tracks to third parties with the understanding and intent that third parties would make those tracks available in Florida and to residents of this district using online streaming or digital download services, and those infringing tracks were provided by those third parties to residents of Florida." Amended Compl. ¶ 4. The Plaintiff therefore argues that the Amended Complaint satisfies Subsection (1)(a)(2) of Florida's long-arm statute because "an out-of-state defendant can be subject to Florida jurisdiction based solely on online activity, without needing more direct contact with the state." Response at 6. Specifically, the Plaintiff says that there are videos "located on the Ello channel and that Florida living native viewers see the video[s], interact [with the videos], comment [on the videos], and even mention their city locations in Florida" in those comments. *Ibid.* But this theory ignores recent guidance from our Circuit on the ways in which courts should navigate personal-jurisdiction inquiries in the "unique context" of "social media and internet-based activities." *Moore v. Cecil*, 109 F.4th 1352, 1363 (11th Cir. 2024).

"To determine whether a defendant 'directly aimed' digital activity at a forum, the Eleventh Circuit has explained, courts 'must look to the defendant's focus, purpose, and/or intent in posting the information." *Karnas*, 2025 WL 3759241, at *8 (quoting *Moore*, 109 F.4th at 1363). "Where the out-

14

of-state defendant deliberately directs his posting at the plaintiff or at an audience in the forum state, the 'directly aimed at the forum prong of the *Calder* effects test is satisfied.'" *Ibid.* (quoting *Moore*, 109 F.4th at 1363 (cleaned up)). "But, where there is no evidence that the defendants posted the information hoping to reach the forum state or an audience in the forum state *specifically*, then the *Calder* effects test is not satisfied." *Ibid.* (quoting *Moore*, 109 F.4th at 1363 (cleaned up)).

We've been given no such evidence of *specific* Florida targeting here. The Amended Complaint alleges that the Defendant reached Florida customers by "distribut[ing] tracks throughout the *United States . . .* and *globally*," Amended Compl. ¶ 7 (emphasis added), "with the understanding and intent that third parties would make those tracks available in Florida," *id.* ¶ 4. But "[m]ere knowledge that the effects of the defendant's conduct would be felt in the forum state, without more, is insufficient." *Moore*, 109 F.4th at 1363–64; *see also Karnas*, 2025 WL 3759241, at *8 n.5 ("The alleged harm here was felt across the United States *generally*, so the fact that information was accessible and accessed in Florida cannot justify the exercise of personal jurisdiction in Florida." (quoting *McCall v. Zotos*, 2023 WL 3946827, at *4–5 (11th Cir. June 12, 2023) (cleaned up))). And rather than allege that the Defendant made Florida *the* "focal point" of Ello's distribution, *Moore*, 109 F.4th at 1364, the Amended Complaint makes plain that the Defendant "purposefully directed its electronic activity and distribut[ion of] infringing tracks [ ] towards *the U.S. market*," Amended Compl. ¶ 7 (emphasis added). So, while the Amended Complaint suggests that the Defendant targeted "thousands of Florians [sic]," *id.* ¶ 6, "who speak Eastern European languages such as Russian and Ukrainian at home," *id.* ¶ 8, it frames that targeting as a mere byproduct of a broader effort to reach "first generation, second generation, or third generation immigrants from the former USSR republics, Eastern Europe, or people who like Eastern European music and performers," *ibid.*; *see also Karnas*, 2025 WL 3759241, at *8 (finding that the *Calder* effects test wasn't satisfied where the complaint alleged that "the Defendants targeted 'Mavericks fans who live in Florida' . . . as a mere byproduct of a broader effort to reach 'NBA fans'

15

writ large"). The Plaintiff thus fails to properly allege that the Defendant took aim at a Florida audience *specifically* "as opposed to . . . a national audience generally." *Moore*, 109 F.4th at 1364.

Our holding today comports with the way in which at least five other circuits—the First, Third, Fifth, Sixth, and Eighth—approach *Calder*'s effects test in the age of digital harms. *See, e.g.*, *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 125 (1st Cir. 2022) ("Nothing in the record indicates that CarData . . . sought to serve Massachusetts residents in particular" as opposed to "North America." (quotation marks omitted)); *Hasson v. FullStory, Inc.*, 114 F.4th 181, 190–91 (3d Cir. 2024) ("[The Plaintiff] neither alleged that Papa Johns' website advertises a product or service bearing any special significance to Pennsylvania, nor that it features Pennsylvania-centric content. Indeed, pizza has national appeal. So Papa Johns did not expressly aim its Session Replay Code at Pennsylvania by operating a website that was accessible in the forum."); *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 787 (5th Cir. 2021) ("Plaintiffs contend that [the] interactive website targets the entire United States, and so it necessarily targets Louisiana. But we have previously rejected this 'greater includes the lesser' theory."); *Blessing v. Chandrasekhar*, 988 F.3d 889, 906 (6th Cir. 2021) ("There is no evidence that the defendants posted the tweets hoping to reach Kentucky specifically as opposed to their Twitter followers generally."); *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 954 (8th Cir. 2022) ("Zazzle's website is nationally accessible, and nowhere does BASIC allege that Zazzle specifically targeted Missouri consumers or the Missouri market.").[6]

---

[6] The Ninth Circuit has held that "sales of *physical* products into a forum via an interactive website can be sufficient to establish that a defendant expressly aimed its conduct at the forum." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1094 (9th Cir. 2023). But that holding was "narrow," requiring that such sales "occur as part of the defendant's regular course of business" and that a defendant wield "some level of control over the ultimate distribution of its products." *Id.* at 1094, 1095. Plus, in the context of *non-physical* products, like the alleged copyright infringement at issue here, the Ninth Circuit appears more closely aligned with the First, Third, Fifth, Sixth, Eighth, and Eleventh Circuits. *See Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 981 (9th Cir. 2021) ("That [the plaintiff] may have addressed much of its advertising to an international or Australian audience does not alter the jurisdictional effect of marketing targeted specifically at the United States, the relevant forum.").

In sum, the "effects test [is] met when [a] tort is *expressly aimed* at a specific individual in the forum whose effects were suffered in the forum." *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1342 (11th Cir. 2025) (cleaned up). And that's not the case here. The record before us *at most* suggests that the Defendant targeted Russian and Ukrainian speakers throughout the country, not in Florida. Floridians might've viewed Ello's allegedly infringing content while scrolling through YouTube. But any such harms bear only a "tangential connection" to Florida. *Micro Fin. Advisors, Inc. v. Coloumb*, 2023 WL 7156898, at *4 (11th Cir. Oct. 31, 2023). Since we cannot say that Florida functioned as the focal point of the harm, the Plaintiff fails the effects test here.

### ii.   The Minimum-Contacts Test[7]

"The Due Process Clause of the Fourteenth Amendment protects a party from being subject to the binding judgment of a forum with which it has established no meaningful contacts, ties, or relations." *Del Valle*, 56 F.4th at 1274 (quotation marks omitted). This requirement demands that "a State's assertion of personal jurisdiction over a nonresident defendant be predicated on 'minimum contacts' between the defendant and the State." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984). "Under the minimum contacts test for purposeful availment, we assess the nonresident defendant's contacts with the forum state and ask whether those contacts: (1) are related to the plaintiff's cause of

---

[7] Some circuits have suggested that the minimum-contacts test "is better suited for contract cases," whereas the effects test—with its focus on "purposeful direction," as opposed to "purposeful availment"—is more appropriate in "tort cases." *Doe v. Deutsche Lufthansa*, 157 F.4th 1103, 1111 (9th Cir. 2025). That view treats the minimum-contacts test as "contracts-oriented." *Licciardello*, 544 F.3d at 1286. But the Eleventh Circuit has held that the effects test "does not supplant the traditional minimum contacts test for purposeful availment applicable in contract and tort cases alike." *Louis Vuitton*, 736 F.3d at 1357; *see also SkyHop Techs*, 58 F.4th at 1230 ("[E]ither test suffices."). Plus, "questions of jurisdictional due process are immune to solution by checklist, a[s] each case must be decided on its own facts." *Oldfield*, 558 F.3d at 1222 (quotation marks omitted); *see also Deutsche Lufthansa*, 157 F.4th at 1111 ("[T]his is not a rigid rule."); *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1089 (9th Cir. 2023) ("Although the distinction between purposeful availment and direction is often a useful and appropriate doctrinal table-setting device, there's no need to adhere to this iron-clad doctrinal dichotomy in every case." (cleaned up)). We'll therefore subject the Plaintiff's claims to both tests.

action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357. In so doing, we "identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy these criteria." *Ibid.*

"The ubiquity of internet commerce creates a myriad of jurisdictional questions." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1096 (9th Cir. 2023). But "[a] number of circuits have addressed personal jurisdiction in the internet context, considering whether, when, and how such peculiarly non-territorial activities as web site hosting, internet posting, and mass emailing can constitute or give rise to contacts that properly support jurisdiction." *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011). "And the Eleventh Circuit has joined that chorus, making clear that 'posting information on the internet is not sufficient by itself to subject that person to personal jurisdiction in each State in which the information is accessed.'" *Karnas*, 2025 WL 3759241, at *9 (quoting *McCall*, 2023 WL 3946827, at *4 (cleaned up)). "Otherwise, a person placing information on the Internet would be subject to personal jurisdiction in every State." *McCall*, 2023 WL 3946827, at *4 (cleaned up).

Purposeful availment thus requires that "the defendant must have had contacts with the forum that were his own choice and not random, isolated, or fortuitous," and "those contacts must show that the defendant deliberately reached out beyond its home." *SkyHop Techs*, 58 F.4th at 1230 (quotation marks omitted). "In the internet context, the Eleventh Circuit has thus rejected the suggestion that 'the mere operation of an interactive website alone gives rise to purposeful availment *anywhere* the website can be accessed.'" *Karnas*, 2025 WL 3759241, at *10 (quoting *Louis Vuitton*, 736 F.3d at 1357). Instead, it has demanded "other contacts with Florida" and evidence that "the cause of action . . . derives directly from those contacts." *Louis Vuitton*, 736 F.3d at 1358 (emphasis omitted).

18

"Practically speaking, this other-contacts evidence resembles the intent element of the effects test." *Karnas*, 2025 WL 3759241, at *10; *see, e.g.*, *Del Valle*, 56 F.4th at 1276 ("[W]e do not have to choose one test over the other with respect to purposeful availment."). So, the Eleventh Circuit has found that digital promotions constitute purposeful availment when, for instance, they involve "banner ads directed at Florida residents, follow-up direct emails sent to Florida residents," and "SEO efforts intended to maximize performance on search engine results pages to purposefully solicit business from Florida residents." *Del Valle*, 56 F.4th at 1276–77.

Again, the Amended Complaint alleges no such targeting. The tracks Ello allegedly distributed "to various platforms and digital music services that infringe upon [the Plaintiff's] valuable recordings" were accessible to *all* internet users, and the Amended Complaint doesn't suggest that the Defendant tried driving traffic to Floridians *specifically*. Amended Compl ¶ 21. As we've said, Ello allegedly "distribute[d] tracks throughout the United States . . . and globally," not just on local Florida platforms. *Id.* ¶ 5. And there are (it goes without saying) "immigrants who speak Eastern European languages such as Russian and Ukrainian at home" throughout the United States and the world (including, we should add, in Eastern Europe, Russia, and Ukraine), *not* just in Florida. *Id.* ¶ 8. Ello therefore undertook an effort to cast a wide—indeed *global*—net. *See, e.g.*, *id.* ¶ 12 ("Ello presents itself . . . as a global commercial distributor of sound recordings and video[.]"); ¶ 47 ("[The] content and music videos distributed by Ello are highly popular among worldwide media users.").

What's more, the Amended Complaint fails to allege "other contacts with Florida" capable of transforming the "mere operation of an interactive website" into purposeful availment. *Louis Vuitton*, 736 F.3d at 1357–58. That some Floridians may have watched the Defendant's YouTube videos doesn't provide those "other contacts" because "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285; *see also Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*, 722 F. App'x 870, 880 (11th Cir. 2018) ("Nor is mere injury to a forum resident

19

a sufficient connection to the forum." (quotation marks omitted)). In any event, basing personal jurisdiction on an isolated contact subverts the purposeful-availment requirement, which shields defendants from being "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

In sum, we cannot find that the Plaintiff satisfies the minimum-contacts test here. The Amended Complaint fails to allege that the Defendant specifically courted Florida customers or markets. The sole jurisdictional hook on which the Plaintiff relies is the availability of the infringing content and the presence of a Russian speaking community in our District. That's not nearly enough. *See, e.g.*, *DFSB Kollective Co. Ltd. v. Bourne*, 897 F. Supp. 2d 871, 874 (N.D. Cal. 2012) ("The best that plaintiffs have done is claim that 'California is one of the largest markets for Korean music'. . . . This is not enough to make a prima facie showing that defendant expressly aimed his conduct at California."); *Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 829 (11th Cir. 2012) ("The fact that . . . an advertisement . . . is viewable in [the forum state] . . . does not, by itself, mean that the website owner had any contact with [the forum state]."). Absent from the Amended Complaint is *any* allegation that the Defendant took steps to *specifically* target Florida residents. And "undifferentiated digital advertising doesn't satisfy the minimum-contacts test." *Karnas*, 2025 WL 3759241, at *10 n.8. In the end, technologies evolve, but our baseline remains the same: "[M]erely advertising in [mediums] of national circulation that are read in the forum state is not a significant contact for jurisdictional purposes," lest "a business that advertised in a national [medium] . . . be subject to jurisdiction in virtually every state." *Lawson Cattle & Equip., Inc. v. Pasture Renovators LLC*, 139 F. App'x 140, 143 (11th Cir. 2005) (quotation marks omitted).

"Our Fourteenth Amendment personal jurisdiction standards" ensure "not only fairness, but also the orderly administration of the laws." *Fuld*, 606 U.S. at 14 (quotation marks omitted); *see also* *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 169 (2023) (Barrett, J., dissenting) ("The Due Process Clause

20

protects more than the rights of defendants—it also protects interstate federalism."). Exerting our power here would imperil those values. If digital streaming alone sufficed to allow us to exercise personal jurisdiction over any non-resident defendant, then a federal court's reach would have no end. The Supreme Court hasn't allowed breakthroughs in content distribution—be it through magazines, radio, television, or the internet—to "herald[ ] the eventual demise of all restrictions on the personal jurisdiction of state courts." *Hanson v. Denckla*, 357 U.S. 235, 251 (1958). Nor do we.

## CONCLUSION

After careful review, therefore, we hereby **ORDER** and **ADJUDGE** as follows:

1. The Defendant's Motion to Dismiss [ECF No. 74] is **GRANTED**. This case is **DISMISSED without prejudice** and without leave to amend.[8]

2. This case shall remain **CLOSED**. All deadlines are **TERMINATED**, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in the Southern District of Florida on July 17, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

---

[8] Our Plaintiff hasn't moved for leave to file a third amended complaint—which is reason enough not to give it. *See Long v. Satz*, 181 F.3d 1275, 1279–80 (11th Cir. 1999) ("Failure to properly request leave to amend, when [a plaintiff] had adequate opportunity and time to do so, precludes the . . . argument . . . that the district court abused its discretion by denying her leave to amend her complaint."). And given that the parties have already conducted extensive jurisdictional discovery, we don't see how a new pleading would cure the jurisdictional defects we've identified here. *See Wade v. Daniels*, 36 F.4th 1318, 1329 (11th Cir. 2022) ("[A] district court can deny leave to amend the complaint when amendment would be futile."). Since we lack personal jurisdiction over the Defendant, we won't be proceeding further with this case.